Hey, please the court. My name is Ryan Norwood. I represent Mr. Honeycutt. If I could, I'd like to reserve one minute of my time for rebuttal and I'll keep track of my clock. Just keep track of your time. In this case, the prosecutor choked the defendant while he was testifying on the stand at his own trial. Every court that's reviewed this behavior has recognized that it was misconduct. The only disputed issue in this appeal is whether it constitutes harmless error under the Brecht standard. Even if harmless error were ever appropriate for this sort of deliberate and egregious conduct. Before you get into this, I mean, I hate to keep harping about standard of review, but this is a pretty important standard, especially in this case. This is an AEDPA case, right? Yes. So, we have a state court who has used the same standard of review that we would use in this particular case. And they've made a decision, and what I'm required then to do thereafter is second-guess their decision. Well, this is actually not, for this particular issue, we're not second-guessing what the state court said. The disputed issue is whether or not this misconduct was harmless. When we review harmless error under AEDPA, even after AEDPA, we use the Brecht standard, which is not a decision, it's not a standard based on deference. It's an independent review by this court, where the court looks at the record and has to determine whether or not this error. So, as to this particular issue, I'm going to use the Brecht standard. Correct. Okay, so if I use the Brecht standard, what are the available factors that I'm going to look at? Well, the first thing that Brecht tells us is that before we even go into a harmless error inquiry, that there are certain types of deliberate and egregious misconduct that infect the integrity of your proceeding. And for that type of behavior, a harmless error inquiry is not appropriate, and the court should presume prejudice. But we don't have any Supreme Court saying that. That's the Supreme Court saying that in Brecht. Well, the Supreme Court says that, but they don't say, as to these particular circumstances, it reaches that standard. Well, I don't believe the Supreme Court's ever been confronted with a circumstance where the prosecutor is attacking the defendant while he's testifying at his trial. So, therefore, we're stuck with making a decision, and that decision, if we're not just going to adamantly say, this is just terrible, we're not even going to lose the factors, then we've got to look at the factors, right? What we would normally do in a Brecht inquiry is we would have to determine whether or not this is an error that we can conclude that this is an error that did not have a substantial and injurious effect on the verdict. You're talking, Your Honor, about the Nevada Supreme Court's decision. Again, in a Brecht inquiry, we don't normally defer to that as far as harmless error, but even if we were to use that as a jumping-off point here, it's worth noting that the Nevada… Well, Nevada did say this was prosecutorial misconduct, but they said it was harmless. They described it as a physical assault for which they could see absolutely no justification. Didn't prejudice your client because he reacted in a manner that reflected well on him. That's what they said. You know, when I read this experience, it occurred to me that that boomeranged on the attorney. If I were sitting in the jury and I saw that episode, I would think, what a dumb thing to do. And instead of helping his case, it hurt his case. Respectfully, Your Honor, we don't know that. I mean, unless we're the jury in that box, we don't know how watching this is going to affect us. No, but we do sit on the bench with the judge and we try to understand the context in which all of this is going on, do we not? Your Honor, when the prosecutor chokes the defendant while he's testifying, he's displaying his personal animus to him. He's conveying a personal opinion that he believes that this person is guilty. He's humiliating and degrading the defendant. He's misstating the evidence, you know, in that he's implying that this is something, you know, this action that he's demonstrating is not what even the complainant's saying happened to her. And he's making a spectacle out of the whole trial. You know, Brecht talks about substantial and injurious effect, and it also says that there may be some situations where, you know, there's grave doubt as to what happened. In that situation, we still need to find harmless error. Using the standards that we are supposed to apply from the Supreme Court's cases, the Nevada Supreme Court's opinion was simply unreasonable. I mean, in saying that, you know, he reacted well, therefore he wasn't prejudiced, they have it precisely backwards. Cases like Garden make clear that the defendant's bad behavior, that his invited misconduct, is a reason not to declare a mistrial, not to deny him one. Also, this finding that Mr. Honeycutt consented to the assault is completely unfounded in the record. He didn't consent to it. What we are supposed to look at, according to the Supreme Court's decisions, are a variety of different factors. I'd just like to discuss a few of them. I'm glad you got there, because that's where I wanted you to go first. Let's look at the factors. One of the factors, the first one, is less than overwhelming evidence of guilt. And your argument is, well, it's the same as the first trial, and this was the difference, and before it was a hung jury, and so therefore it had to be this. But I see this as a totally different trial. In this trial, we got a development of a solicitation of a murder that's being tried at the same time. That's a totally different case than what we had the first time. Even considering that evidence, and one of the other claims in this appeal is that shouldn't have come in at all. I understand, but that's another issue as to whether the district court, in its discretion, shouldn't have done that. But we got a different case. You can't say this is the same case. Even considering that evidence, Your Honor, on balance, the defense case is stronger at the second trial. Most importantly is, at this first trial where the jury is unable to reach a verdict, the only expert testimony is the unrebutted testimony of the state expert saying that the complainant's injuries are consistent with what she was claiming. So at the second trial, the defense calls their own expert, a doctor with expertise in rectal and colon surgery, who says, first, that these injuries, you know, that the rectal injuries don't tell you anything about whether or not this was consensual. And second, that if what the complainant was saying was true, you would expect to see bruising, and there's no bruising. And this defense expert is the one who had no experience with sexual assault cases? This is a doctor, a surgeon. I know who it is. I'm just trying to say, if you're going to own up to the fact that that doctor had no experience with sexual assault cases, then the jury very well could have said, you don't know what you're talking about. They could have done that, or they could have credited him. This is a case that involves numerous credibility disputes between witnesses called by the prosecution and witnesses called by the defense. Well, let's look at the fourth factor. Fourth factor is the prosecutor's mischaracterization of the evidence. Seems to me you got the best out of that. If the trial court, if this were true, that there was a mischaracterization, there was an objection made, and the court sustained it. If, in fact, having sat in a lot of these trials with a jury sitting there, and you're doing this kind of stuff, and somebody objects, and I say sustained counsel, that is clear indication to the jury that was terrible. I would disagree, Your Honor. This was handled the same way as if it was an objection to a leading question. It's true that in private with the lawyers, the judge made clear to the prosecutor that this behavior was inappropriate. Again, on a standard which is deferential, or on a standard which is trying to determine if it really meets the factors, I'm just trying to have you think about that. Because what you're asking me to do is undo the state court. The only thing that we're undoing with the state court with respect to this claim is this finding that it didn't prejudice the outcome of the trial. Okay, let's take the lack of opportunity to rebut. Counsel didn't even ask for an opportunity to do anything. This happened at the end of the cross-examination, and I guess who would beg the question? I mean, they didn't even ask, so I can't really look at that. All I can look is he objected, and it was sustained. Let's look at the factor lack of a curative instruction. The court gave an instruction that regardless what the counsel did, it was the jury's duty to determine what to do, regardless of whatever counsel said or didn't say. That's a general instruction, Your Honor. I know it's a general instruction, but I guess I'm trying to figure out, having seen juries and how they follow instructions, I'm having a tough time understanding why they jumped to whatever counsel said after I gave that. The cases in which the Supreme Court talks about misconduct being okay, there's a lot more done than what's done here. There are specific instructions that make it perfectly clear that what the prosecutor did was completely improper, and that wasn't done here. This also isn't an isolated incident. I mean, there's a long chain of behavior by the prosecutor before and after that I discussed. So you're going to go to the second factor, the ongoing pattern of misconduct. Yes, Your Honor. I wonder if we could move on to the undercover people's statements, because I think that's a crucial question here, the admission of the statements that were gained by undercover agents after he'd been given counsel. I'll be happy to do that, Your Honor. As Judge Smith pointed out, one of the differences in the second trial is that there is this solicitation evidence that's introduced not only to prove this new charge, but the state specifically seeks the joinder and then admits that evidence and asks the jury to consider it as evidence that he's guilty of the sexual assault. And as to this particular issue, do we give deference? We give deference here because there's a contrary decision, but here there's a Supreme Court case that's directly on point, Mead v. Moulton, that says that you can't do this. What about the Supreme Court of McNeil, 501 U.S. 17576? It says right here, the police have an interest in investigating new or additional crimes after an individual is formally charged with another crime to exclude the evidence pertaining to the charges as to which the Sixth Amendment right to counsel has not attached to the time the evidence was obtained simply because the other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. That's basically what Moulton says, too. There's no problem, per se, in the police conducting this investigation. There would be no problem using it to prove these new charges, but that's not what they're doing here. They're using it to prove the old charges for which the right to counsel has attached. Again, given the standard and given that I have to give some deference to the state court decision here and given the Supreme Court precedent as to this issue, it seems a tough case for you to say that the state court just simply got it wrong. Now, they may not have done it the way you wanted to do it, or I would have done it, but just simply wrong. Where is the Supreme Court case and what is the language that you have that said the theory that forbids the investigation of a new or additional crime after the defendant had been formally charged with another crime is out of it? You can't let it in. Again, that's not the argument. The issue is for what purpose can you use the evidence? Maine v. Moulton clearly says that you can't use this evidence to prove the charges for which the right to counsel had already attached, and that's exactly what the state is doing here. Well, the only reason that you're suggesting that is it seems to me you're making kind of a little bit different argument. Because these were tried together, there might have been some reason or some idea that they could be used for both, but the fact is that what they did did not affect anything. In fact, you agree the state can prove other offenses for which the right to counsel is not attached, even if those offenses are factually related to the pending charges. So you're making just a little bit of a turn here, and you're saying, and the Nevada Supreme Court should have seen that. Well, Your Honor, the point is that this was primarily used to prove the new offense. I won't disagree with you, but then we can't come in and say that this is the big difference that makes the first error that we're discussing harmless. Your argument is nuanced, because it seems to me on page 72 of your brief you're agreeing with some of what I say, but then you try to nuance it enough that, oh, and because it was also being charged at the same time or being testified to at the same time, somehow it caused a problem. It's actually the exact same situation in Maine v. Moulton. There are old charges, they add new charges based on their investigation. There's a trial. The defendant's convicted of both the old and the new charges. This is one of those cases where there's a case directly on point that says that what they did was wrong. I see that I have about 30 seconds left. Could I reserve that for a moment? Yes, you may do so, counsel. We'll hear from the State. Good morning, Your Honors. My name is Dennis Wilson, appearing on behalf of the respondent, Gordon. This case is, as you're well aware, concerns two conflicting stories. The defendant claimed that he and the victim had consensual sex, and after that he stole $200 from her wallet, and that's why she charged him or claimed that he had raped her. If you look at all the evidence of how she reacted, how she came in front of the Luxor Hotel, and she staggered onto somebody like a rag doll, and how she asked that individual, remember this license plate number. She was taken into the Luxor Hotel, and there she sat. There was a videotape of her sitting in the room, hysterical, crying with her knees wrapped up around her chin. There was many other facts that showed that his story was not true, that he was not telling the truth. And based on that, any misconduct, any prosecutorial misconduct is harmless. So that's the basic underpinning of the entire argument. And light of the whole record, if you look at it, there was no due process violation. Well, let's face it, the jury didn't agree the first time. I wish you would deal with the question of sending undercover agents in to get information that was used in the prosecution of the first crime. The undercover agents were sent in after the first trial, before the second trial. Right, but that information was used in the second trial as part of the case against him. That information was only used as evidence to show that he tried to have her murdered. But it was also showing that he was concerned about being found guilty on the first claim. I don't think you can sustain your position. Well, and I think in light of Maine v. Moulton, as the Court has previously mentioned, the question is, even if there's charges pending, the sexual assault case is pending, the state can send in undercover officers as long as the Sixth Amendment right hasn't attached. And because he hadn't been charged yet, hadn't had counsel, the Sixth Amendment right hadn't charged, hadn't attached, so they could bring that evidence in. And that evidence of the solicitation to commit murder was admissible to show motive in the sexual assault case. That's how it came in. But they used it on the first counts. Excuse me? They used it on the counts to which counsel was attached. They used the undercover agent's testimony to prove something to which the right of counsel already attached. Well, you know, with all due respect, Your Honor, I don't believe that it did. I think they used the evidence of the statements he had made and the information he had given to the inmate regarding the address of the victim in Canada and her physical description, including the size of her breasts, used that evidence to show that he did solicit to commit her murder. And because he—the reason for his doing that was because he wanted her to disappear. He said that. And are you stating unequivocally that you believe that it was not used to prove the first counts? I am, Your Honor. I may be mistaken, but I am. Let me ask you this. Is there any evidence in this record that the State deliberately elicited statements from the defendant regarding the charged crimes? Regarding the—only regarding the crime of solicitation to commit murder, yes. Regarding that, but that wasn't charged at the time, correct? That was not. And so, as I read the record, I didn't find anything where the State deliberately elicited statements on the charged crimes. All of what they were seeking was the uncharged crime. That's correct. Is there any evidence the State had any reason to suspect that the defendant would make incriminating statements regarding the charged crimes? No, not regarding the sexual assault case. They were looking at something completely different. I mean, it seems to me that if the argument is going to stand up at all, somebody ought to have some evidence that the State was in there trying to get statements about the charged crimes or that they had reason to know that he would give them statements about the charged crimes. I couldn't find any evidence about that. I couldn't either, Your Honor. I guess I'd like you to focus a little bit on the first. Your counsel raised very carefully the first that he wanted to go was the choking the defendant. And I ask him the questions that I have. Why isn't the choking the defendant—I mean, we're— Brecht says actions warning relief only if they had substantial and injurious effect or influence. Here's a guy up here choking the defendant. It's clearly misconduct, no question. As the defense stated, every court that has looked at this, everybody agrees it was prosecutorial misconduct. But every court that looked at it has also stated it was not prejudicial prosecutorial misconduct. In looking at the entire record, and again I go back to the fact that his story— and he had to invent something to explain why she goes to the police. His story is, well, we had this consensual sex, but then I stole $200 and that's why she's doing this. That is not supported by all the physical, all the evidence. Her appearance, being afraid to go into the bathroom stall because she was bleeding. Afraid to have the door closed while she was in the bathroom stall. She wanted that open, hanging on to the arm of the security officer and bruising the arm of the security officer because she was so upset about what happened. In light of all that evidence, his story does not make any sense. She's not going to do all of that over $200 when she's in Las Vegas from Canada on a weekend trip. Are you responding to his question about the choking? I think that's the concern. Well, and again, I think I am responding because in determining if it was a harmless error, you have to look at the entire record. But don't I have to really look at the factors in Brecht to determine? Yes, you do, Your Honor. So that's, I mean, you can get to harmlessness, but if I'm really looking at the factors in Brecht, I wanted you to talk about those just a little bit. First factor is less than overwhelming evidence of guilt. This is one guy says one thing, one gal says another. Isn't this less than overwhelming? No. Again, I listed in my brief all the testimony that came out where she said what had happened in the van and all the testimony from the other witnesses about what happened after she was dropped off at the Luxor. She goes to the hospital to get examined. All of that shows that there was overwhelming evidence that he had sexually assaulted her, overwhelming evidence that his story was not true, that he was not telling the truth. How about the ongoing pattern of misconduct? Here, the defendant says not only did the prosecutor choke me, but the prosecutor in the middle of his argument said, Oh, so you're saying they're lying, huh? Then the prosecutor makes a lot of other inflammatory and irrelevant questions, and lastly, the prosecutor vouched improperly. That seems like a pretty ongoing pattern of misconduct. And just before I answer that, just let me go back to the choking incident for a second. The Supreme Court, the State Supreme Court, and the Federal District Court found that there was no real indication that the jury had been prejudiced. As the court said earlier, this thing boomeranged on the attorney. When he got up and did that, what's the jury going to think? The outrage, if any, is going to be aimed at the person that did the act. The defendant responded well. He did not prejudice himself by the way he responded. I'll just mention that as evidence regarding the choking. Regarding the ongoing pattern, the State Supreme Court and the Federal District Court looked at it and said that when you have two conflicting stories like this, you can draw an inference that somebody is lying. Either she's lying or he's lying. So in that type of situation, citing to federal case law, the Federal District Court showed that that was appropriate in this circumstance because somebody was lying. It's clear somebody's lying. So it's proper and it's not prosecutorial misconduct to say that. When he's going through stating that all these people are asking him, well, is he lying? Is he lying? He answers the question, yes, he is. The inmate, Polly, was lying. The undercover detective who testified that he wanted to hire him to kill this woman, he said that he was mistaken. But in looking at all the facts, it was proper, not prosecutorial misconduct, State. Do you really think some of those questions were okay? I don't. I really don't, Your Honor. But as the court said, as the Federal District Court said, the prosecution can test the credibility of the witness through its questioning and their afforded broad latitude in closing arguments. Again, we go back to the question of harmless error. In light of all this evidence, did that misconduct affect the jury's verdict? And based on his meager story of what happened and her detailed and supportive story of what did happen, it was not prosecutorial misconduct. Thank you, counsel. Mr. Norwood, you have a little bit of time left. Your Honor, the State is referring to some evidence showing the victim's subjective belief in what happened to her, and that's certainly how this case was presented to the jury, that if you believe that she believed that she was raped, then she was raped. Under Nevada law, though, one of the elements the State has to prove is that the defendant didn't have a reasonable belief that she had consented. The problem is the jury was never told about this, because they were never instructed on this element of the offense. Well, just a minute. Let's talk about that. One of the jury instructions outlined that to meet the elements of sexual assault, the act must be committed against the victim's will. Yes. How do you find that something is done against the victim's will and still find a reasonable belief as to consent? The instruction doesn't say anything about a reasonable belief of consent on the defendant's part. It doesn't say anything about it. I understand that. The instruction tendered was not correct either. I mean, it didn't give everything that needed to be there, but now we're not talking about that. We're talking about did they instruct as to the specific elements of what they had to prove, and so then I have to look at the totality of the circumstances. And then I have an instruction that was right there, and it outlines that in order to meet the elements of sexual assault, the act must be committed against the victim's will. Now, I don't know how that one can say that an act is committed against the victim's will, which is exactly what the jury found, and then still say that they needed another further element in the other instruction about reasonable belief as to consent. The reason that needed to be in the instruction is because that's what Nevada law says an element of the defense is. I understand what that is. That's not the answer. That's not the question I ask. We're looking at the totality of the instructions given, and I'm not looking at whether the instruction was given. The defense counsel didn't even tender the right instruction. They didn't give that good instruction, and therefore the court sufficiently said, I'm not giving it, but the court left out the reasonable belief as to consent, so I'm looking at all the instructions to see if that were there or not. Now, tell me why, when I have to say in order to meet the elements of sexual assault, the act must be committed against the victim's will, why isn't that the same instruction you want? Why doesn't it say the same thing? Because it doesn't say that the jury needs to find beyond a reasonable doubt that the defendant didn't have a reasonable belief.  It implies that the whole focus is on what the complainant believed, and that's the way it was argued to them during the trial. All right, thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Smith